IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAREXEL INTERNATIONAL CORPORATION, :
PAREXEL INTERNATIONAL TRUST, and    :
BARNETT INTERNATIONAL,              :
                                    :
          Plaintiffs and            :     CIVIL ACTION
          Counterclaim Defendants,  :
                                    :     No. 04-cv-3798
     v.                             :
                                    :
OSWALDO FELICIANO and INNOVATIVE    :
MEDIA MACHINE, INC.,                :
                                    :
          Defendants and           :
          Counterclaim Plaintiffs.  :

MEMORANDUM AND ORDER

Joyner, J.                                    December 3, 2008

        Presently before the Court are Counterclaim Defendants'

("Defendants") Renewed Motion for Judgment as a Matter of Law or,

in the Alternative, for a New Trial on the Sarbanes-Oxley claim,

Defendants' Motion for Remittitur of the Punitive Damages Award

or, in the Alternative, for a New Trial (Doc. No. 176),

Counterclaim Plaintiffs' ("Plaintiffs") Response thereto (Doc.

No. 179), Defendants' Reply (Doc. No. 188), Defendants'

Supplement to Their Memoranda of Law in Support of Their Post-

Trial Motions (Doc. No. 200), and Plaintiff's Response to

1

Parexel's Supplement to its Post-Trial Motions (Doc. No. 201).
For the reasons set forth below, Defendants' motions are DENIED.

## BACKGROUND

In August of 2004, Parexel brought suit against former
employee Oswaldo Feliciano and Innovative Media Machine, Inc.
("IMM") for tortious interference with contract relations,
commercial disparagement, misappropriation of confidential or
proprietary information, breach of contract and defamation.
Feliciano, who worked as a Managing Systems Architect for
Barnett,[1] brought counter-claims alleging that he was terminated
for refusing to engage in illegal activity in violation of
Pennsylvania public policy when requested to do so by his
supervisor and in retaliation, in violation of the Sarbanes-Oxley
Act of 2002 ("SOX"), for reporting his supervisor's allegedly
illegal activities.  Specifically, Feliciano claimed that Ann
Carraher, Vice President of Barnett Educational Systems,
wrongfully obtained the membership records of various private
organizations and authorized the incorporation of these records
into a Parexel marketing database.  Between July of 2003 and
October of 2003, Feliciano made complaints regarding the
allegedly unlawful use of the database to various Barnett
employees, including Ms. Carraher herself and Lisa Roth, head of

---

[1] Barnett became a division of Parexel International Corporation
during the course of Feliciano's employment.

Human Resources.  Upon Ms. Roth's request, Lorrie Ferraro, Human Resources Director at Parexel, commenced an investigation of the matter which resulted in Ms. Carraher's termination in April of 2004.  On June 21, 2004, Feliciano himself was terminated.

Counter-claim Defendants ("Defendants") contended that Feliciano was terminated because he had an undisclosed ownership interest in an outside company, in violation of the terms of his employment agreement.  The company in question, IMM, provided services to Parexel during the course of Feliciano's employment, and it was alleged that Feliciano was involved in approving payments to IMM, but never disclosed his conflict of interest.

In an Order dated June 30, 2008, this Court granted summary judgment in favor of Counter-claim Plaintiff ("Plaintiff") on Defendants' claims of tortious interference, commercial disparagement, breach of contract and misappropriation of proprietary information.  On September 4, 2008, the parties filed, and the Court signed, a Stipulation and Joint Motion for Entry of a Permanent Order that fully and finally resolved all claims asserted by Defendants against Plaintiffs.  A trial commenced on the remaining claims on September 9, 2008.  At the conclusion of trial, the jury found that Parexel had retaliated against Feliciano in violation of SOX and had terminated Feliciano's employment because he refused to engage in illegal conduct in violation of Pennsylvania public policy.  The jury awarded Feliciano $94,000 in back pay and compensatory damages and $1.7 million in punitive damages on the wrongful termination

3

claim.  The jury also awarded IMM $45,000 for its breach of contract claim against Parexel.

At the conclusion of trial, Defendants moved for judgment as a matter of law on the SOX claim.  Defendants have now renewed their motion for judgment as a matter of law or, in the alternative, for a new trial pursuant to Fed. R. Civ. P. 50(b) and have moved for remittitur of the punitive damages award or, in the alternative, for a new trial on the wrongful termination claim.[2]

## **DISCUSSION**

I.    **Defendants' Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial**

   A.   **Rule 50 Motion for Judgment as a Matter of Law**

Upon the renewed motion of a party, a trial court may enter judgment as a matter of law after the conclusion of a jury trial if there was no "legally sufficient evidentiary basis" for the jury reasonably to have found for the opposing party.  Fed. R. Civ. P. 50(a), (b).  Such judgment may be entered "only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford

---

[2] Prior to trial, Defendants filed a motion to strike Plaintiff's request for a jury trial on the Sarbanes-Oxley ("SOX") claim.  Rather than deciding this motion, the Court empaneled an advisory jury.  Upon review of the relevant authorities, the Court finds that the SOX claim was appropriately placed with the jury.  Were it to be found, however, that the Court should have independently decided the claim, the Court's findings on the SOX issues would be consistent with those of the jury.

relief." <u>Trabal v. Wells Fargo Armored Serv. Corp.</u>, 269 F.3d 243, 249 (3d Cir. 2001).  Judgment as a matter of law should be granted sparingly and the Court may not weigh the evidence, determine the credibility of witnesses, or substitute its own version of the facts for that of the jury.  <u>Marra v. Phila. Housing Auth.</u>, 497 F.3d 286, 300 (3d Cir. 2007); <u>Lightning Lube v. Witco Corp.</u>, 4 F.3d 1153, 1166 (3d Cir. 1993).  Rather, we must view the evidence in the light most favorable to the nonmoving party and, "giving it the advantage of every favorable inference," determine if "there is insufficient evidence from which a jury reasonably could find liability."  <u>Marra</u>, 497 F.3d at 300.

Defendants have moved for the Court to enter judgment as a matter of law on Plaintiff's retaliation claim brought under Section 806 of the Sarbanes-Oxley Act of 2002 ("SOX"), codified at 18 U.S.C. § 1514A.  Section 1514A provides protection for an employee of a publicly traded company who reports information that the employee reasonably believes constitutes mail fraud, wire fraud, bank fraud, or securities fraud, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders.

18 U.S.C. § 1514A(a)(1).[3] To establish a retaliation claim under SOX, a plaintiff must prove by a preponderance of the evidence that (1) he engaged in protected activity or conduct, (2) his employer knew or suspected, actually or constructively, that he engaged in the protected activity, (3) he suffered an unfavorable personnel action, and (4) the circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the unfavorable action.  29 C.F.R. § 1980.104 (2004).  To be protected, an employee's belief that the reported conduct violates one of the six enumerated categories must be both objectively and subjectively reasonable, however it need not be correct.  Allen v. Administrative Review Bd., 514 F.3d 468, 477 (5th Cir. 2008).  A mistaken but reasonable belief is still protected under SOX.  Id.

---

[3] Section 1514A specifically provides, *inter alia*, that a publicly traded company or "any officer, employer, contractor, subcontractor, or agent of such company," may not

> [D]ischarge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee–
> (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders . . . .

18 U.S.C. § 1514A(a)(2000 & Supp. 2008).

6

Defendants assert that Plaintiff failed to introduce legally sufficient evidence to support his claim that he objectively reasonably believed that Defendants' theft of marketing contacts and continued use of the stolen marketing contacts violated any of the enumerated categories in Section 1514A.  Defendants argue that to be protected under Section 1514A, Plaintiff must have reasonably believed that Defendants' conduct constituted the Black's Law Dictionary definition of fraud.[4]  Specifically, Defendants claim that Plaintiff failed to present evidence that Defendants used the stolen marketing database to deceptively "induce another to act to his or her detriment." Defs.' Br. 9. Defendants claim that the misconduct reported by Plaintiff and presented to the jury "was at worst theft" and that Plaintiff never tried to prove that he reasonably believed that defendants used the stolen marketing contacts deceptively to "induce another to act to his or her detriment."  Defs.' Br. 9.  Thus, they conclude, there was no evidence to support the jury's finding that Plaintiff reasonably believed the Defendants were engaged in

---

[4] Defendants quote <u>Black's Law Dictionary</u> 670 (7th ed. 1999), to support their assertion that fraud is "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment."  Defendants also cite to cases enunciating the elements of common law fraud under Pennsylvania law and the elements of mail or wire fraud under federal law.

fraud and judgment as a matter of law should, therefore, be entered in Defendants' favor.[5]

The Court previously denied Defendants' Motion for Summary Judgment on this same issue, albeit with a different argument, and found that there was sufficient evidence to support a finding that Plaintiff engaged in protected activity by reporting information which he reasonably believed constituted wire fraud. Plaintiff presented at trial evidence similar to that which the Court considered in opposition to Defendants' Motion for Summary Judgment and the jury found that Plaintiff did indeed objectively reasonably believe that Defendants conduct constituted mail fraud, wire fraud or fraud against Defendants' shareholders.

Viewing the evidence in the light most favorable to the Plaintiffs, the Court disagrees with Defendants' argument that a reasonable jury could not have found that Plaintiff's belief was objectively reasonable.  Plaintiff testified, *inter alia*, that while working to ensure that Barnett Educational Services ("BES")

---

[5] Defendants also assert that they sent "wholly truthful marketing information" to induce individuals into doing business with them, as opposed to sending "dishonest or misleading marketing materials," and thus there was no deception, and hence no fraud, regardless that Defendants procured the names of these contacts from a proprietary list that they had stolen from a third-party.  To the extent that Defendants are asserting that a Section 1514A violation cannot be established without a showing of actual fraud, the argument must fail.  As previously stated, a mistaken but reasonable belief that an employer's conduct violated one of the categories in section 1514A is still protected under SOX, regardless that the conduct did not actually constitute fraud.  Allen v. Administrative Review Bd., 514 F.3d 468, 477 (5th Cir. 2008).

complied with SOX, he discovered that a significant portion of the company's marketing database was illegally obtained from third-parties. See N.T., Sept. 9, 2008, at 156-72. He also testified that he subsequently reported the illegally obtained database to several representatives of Parexel, including his supervisor, and voiced his concern about Parexel's use of the database and its effect on the business. See N.T., Sept. 9, 2008, at 172-74, 214-15. Testimony was provided at trial that Parexel knew about the illegally obtained database, Parexel used the database to solicit business through spam emails and direct mailings, the marketing database was the backbone of Parexel's sales process and was a significant source of revenue for Parexel. See N.T., Sept. 9, 2008, at 204-08; N.T., Sept. 10, 2008, at 182-87, 210, 230. Plaintiff also testified that one of Parexel's representatives told him that removing the illegally obtained records from the database would kill the BES business and exhibited to him an intent not to purge the system of the illegal obtained information. See N.T. Sept. 9, 2008, at 212-14; N.T. Sept. 10, 2008, at 240. Thus the record is not "critically deficient of that minimum quantity of evidence from which a jury might reasonably" find that Plaintiff's belief was objectively reasonable, regardless that Defendants' conduct ultimately may not have constituted actual fraud. Trabal v. Wells Fargo

9

ArmoredServ. Corp., 269 F.3d 243, 249 (3d Cir. 2001).[6]

Defendants' motion for judgment as a matter of law is, therefore,

denied.

### B.  Rule 59 Motion for New Trial

A district court has discretion to order a new trial

pursuant to Federal Rule of Civil Procedure 59.  Wagner v. Fair

Acres Geriatric Ctr., 49 F.3d 1002, 1017 (3d Cir. 1995).  Under

Rule 59(a), a court may grant a new trial "for any of the reasons

which new trials have heretofore been granted."  Fed. R. Civ. P.

59(a).  A court may grant a new trial if doing so is required to

prevent injustice or to correct a verdict that was against the

weight of the evidence.  Corrigan v. Methodist Hosp., 234 F.

Supp. 2d 494, 498 (E.D. Pa. 2002).  A court may also grant a new

trial if the verdict was the result of erroneous jury

instructions, was excessive or clearly unsupported by the

evidence, or was influenced by extraneous matters such as

passion, prejudice, sympathy or speculation.  Id.  Granting a new

---

[6] In addition, the objective reasonableness of an employee's belief "is evaluated based on the knowledge available to a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee."  Allen, 514 F.3d at 477.  Were Plaintiff a legal expert, Defendants' argument that an objectively reasonable belief that conduct constituted fraud can only be established after introducing evidence of actual fraud would be more persuasive.  Cf. id. at 479 (finding that although violation of SEC Staff Accounting Bulletin ("SAB") could fall within fifth enumerated category in §1514A, employee's belief that employer violated SEC rule or regulation was not objectively reasonable where employee was a licensed CPA, and thus an accounting expert, and therefore knew violating a SAB was not an actual violation of an SEC rule or regulation).  Under the present circumstances, however, this is not the case.

trial requires meeting a "high threshold," <u>Grazier v. City of Philadelphia</u>, 328 F.3d 120, 128 (3d Cir. 2003), and "[a]bsent a showing of substantial injustice or prejudicial error, a new trial is not warranted and it is the court's duty to respect a plausible jury verdict."  <u>Montgomery Cty. v. MicroVote Corp.</u>, 152 F. Supp. 2d 784, 795 (E.D. Pa. 2001).

In the alternative to judgment as a matter of law, Defendants have moved for a new trial.  In support of their motion, Defendants argue that there is no evidence to support the jury's determination and that the evidence "so clearly" does not support the verdict that allowing it to stand would be a "blatant miscarriage of justice."  Defs.' Br. 9-10.  Defendants also assert that the verdict was "clearly the product of jury passion and prejudice" and that Defendants alleged theft so inflamed the jury that they punished Defendants for the theft rather than the wrongful termination at issue.  Defs.' Br. 10.  Defendants support this assertion by pointing to the punitive damages award and arguing that the same alleged passion that motivated the allegedly grossly disproportionate punitive damages award must have also affected the jury's determination on the SOX claim.

The Court disagrees with Defendants' characterization of the evidence adduced at trial.  As discussed above, the trial was not devoid of evidence to support the jury's determination.  On the

contrary, the Court finds more than enough evidence upon which the jury could have reasonably found that Defendants' conduct violated Section 1514A and thus allowing the verdict to stand is not a "blatant miscarriage of justice."

The Defendants' additional assertion that the jury's finding against them could only be the product of passion is unpersuasive.  That the jury chose an amount of punitive damages based on a number that was related to the trial — the amount of revenue allegedly generated from the marketing database — does not, as Defendants insist, show that the Defendants' theft "so inflamed" the jury that its decision was "clearly the product of jury passion and prejudice."  Defs.' Br. 10.  On the contrary, it shows that rather than choosing an arbitrary number, the jury chose an amount it reasonably and rationally believed was appropriate under the circumstances.[7]  Defendants' alternative motion for a new trial is denied.

## II.   Defendants' Motion for Remittitur of the Punitive Damages Award or, in the Alternative, for a New Trial

Punitive damage awards serve "to further a State's legitimate interests in punishing unlawful conduct and deterring

_____

[7] The size of a punitive damages award also does not in and of itself evidence jury passion and prejudice, see Inter Med. Supplies, Ltd. v. Ebi Med. Sys., 181 F.3d 446, 464 (3d Cir. 1999); Dunn v. Hovic, 1 F.3d 1371, 1383 (3d Cir. 1993)(en banc), particularly in light of the evidence presented at trial to support the jury's finding that Plaintiff was fired from his job because he refused to engage in illegal activity.

its repetition."  <u>BMW of North America, Inc. v. Gore</u>, 517 U.S.
559, 569 (1996); <u>see also</u> <u>State Farm Mut. Auto Ins. Co. v.</u>
<u>Campbell</u>, 538 U.S. 408, 416 (stating punitive damages are "aimed
at deterrence and retribution").  Awards that are grossly
excessive in relation to these interests, however, become
arbitrary and thus violate the Due Process Clause of the
Fourteenth Amendment.  <u>Gore</u>, 517 U.S. at 569; <u>Campbell</u>, 538 U.S.
at 417.  The Supreme Court has provided three guideposts to
consider when evaluating whether a punitive damages award is
unconstitutionally excessive: (1) the reprehensibility of the
defendant's misconduct; (2) the ratio of the punitive damages
award to the actual or potential harm suffered by the plaintiff;
and (3) the difference between the punitive damages award and the
civil penalties authorized or imposed in comparable cases.
<u>Campbell</u>, 538 U.S. 418 (citing <u>Gore</u>, 517 U.S. at 575).

Additionally, a court may consider a defendant's wealth
because "what 'may be awesome punishment for an impecunious
individual defendant . . . [may be] wholly insufficient to
influence the behavior of a prosperous corporation.'" <u>CGB</u>
<u>Occupational Therapy, Inc. v. RHA Health Services, Inc.</u>, 499 F.3d
184, 193 (3d Cir. 2007) (quoting <u>Continental Trend Resources,</u>
<u>Inc. v. OXY USA, Inc.</u>, 101 F.3d 634, 641 (10th Cir. 1996)).
Wealth of the defendant, however, "cannot justify an otherwise

unconstitutional punitive damages award." <u>Campbell</u>, 538 U.S. 428.

To prevent judicial overreaching, trial courts must give a measure of deference to a jury's determination when evaluating the appropriateness of a punitive damages award. <u>Willow Inn, Inc. v. Public Service Mut. Ins. Co.</u>, 399 F.3d 224, 231 (3d Cir. 2005). If a court finds the punitive damages award is unconstitutionally excessive, it should "decrease the award to an amount the evidence will bear . . . ." <u>Id.</u> Where the jury's punitive damages award "is free of irrationality, passion, and prejudice," however, "and falls within the 'broad discretion in authorizing and limiting permissible punitive damages awards' lodged with state legislatures," the Court should not substitute its own judgment for that of the jury's. <u>Id.</u> (quoting <u>Cooper Indus., Inc. v. Leatherman Tool Group, Inc.</u>, 532 U.S. 424, 433 (2001)).

**A.  Reprehensibility of Defendants' Conduct**

The degree of reprehensibility of a defendant's conduct is "'[t]he most important indicium of the reasonableness of a punitive damages award . . . .'" <u>Campbell</u>, 538 U.S. at 419 (quoting <u>Gore</u>, 517 U.S. at 575). To determine the defendants degree of reprehensibility, courts should consider whether the conduct caused physical or economic harm, evidenced an

14

indifference to or reckless disregard of the health or safety of others, targeted someone who was financially vulnerable, involved repeated actions or an isolated incident, or involved intentional malice, trickery, or deceit rather than mere accident.  Campbell, 538 U.S. at 419.

In the instant case, the Defendants conduct caused economic and not physical harm.  The economic harm, however, did not result merely from a contractual relationship where the parties could have and should have protected themselves in case of breach.  See Inter Med. Supplies, Ltd. v. Ebi Med. Sys., 181 F.3d 446, 467 (3d Cir. 1999).  The jury found that Defendants fired Plaintiff from his job because he refused to engage in illegal conduct.  The harm was thus not just a simple economic loss, but rather went to the source of his livelihood.  The Court does agree with the Defendants that the conduct did not involve the health or safety of others, nor did it involve repeated actions. Firing the Plaintiff was, however, an intentional act and not an accident, and firing the Plaintiff in and of itself made him financially vulnerable.  "To be sure, infliction of economic injury, especially when done intentionally through affirmative acts of misconduct . . . can warrant substantial penalty."  Gore, 517 U.S. at 576.  The Court finds that this is such a case.

**B.   Ratio of Punitive Damages to Actual or Potential Harm**

There is no bright-line ratio over which a punitive damages award will exceed the constitutional limit; however, the measure of punishment must be "both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." <u>Campbell</u>, 538 U.S. at 425, 426.  Though compliance with due process is not "'marked by a simple mathematical formula,'" single-digit ratios between punitive damages awards and actual or potential harm are more likely to comport with due process than awards with significantly higher ratios.  <u>Id.</u> at 425 (quoting <u>Gore</u>, 517 U.S. at 582).  A higher ratio may nevertheless comport with due process where particularly egregious conduct causes only a small amount of economic damages.  <u>Id.</u>

Defendants' assert that the ratio of punitive damages to actual harm in this case is 35 to 1, well outside the realm of single-digit ratios generally accepted.  They reach this conclusion by comparing the punitive damages award to the amount of compensatory damages awarded to Plaintiff.  The Plaintiff offers several alternative ratios by including the amount of back pay Plaintiff initially sought or the amount of attorney's fees Plaintiff incurred.

Although the Court disagrees with Plaintiff's use of attorney's fees, we agree that the potential harm to Plaintiff was more than merely what the jury awarded as compensation after

16

they took into account the fact that Plaintiff was able to
mitigate his own damages.  Had Plaintiff not been able to
generate income through other means, his potential harm from
losing his job could have been significantly higher than the
compensatory damages and back pay awards.  Moreover, had
Defendants succeeded in their attempts to illicit Plaintiff's
help in stealing marketing contacts or had Plaintiff acquiesced
to such illegal activity, Plaintiff testified that being branded
as someone who pirates proprietary information in his profession
would have ruined him.  Thus, the potential harm to Plaintiff was
well beyond merely the ratio of punitive damages to compensatory
damages, as Defendants argue.  The proper ratio in this case,
therefore, takes into account the back pay and compensatory
damages the jury awarded as well as the potential harm to
Plaintiff had he not been able to mitigate his damages or had he
been branded as a pirator as a result of Parexel's illegal
conduct.  Thus the punitive damages award is well within
Constitutional limits.[8]

---

[8] Calculating the ratio of punitive damages to actual harm had Plaintiff
not been able to mitigate his damages—i.e. $1.7 million to $350,000—would have
resulted in roughly a 5 to 1 ratio, well within the single digit ratios
generally found to be within constitutional limits.  Adding on the potential
harm had Plaintiff been branded a pirator in his profession makes the ratio
that much more reasonable.  Moreover, even if the compensatory damages award
were the proper amount to use in calculating the ratio, unlawfully obtaining
marketing contacts and then terminating an employee after he refused to engage
in such illegal conduct seems particularly egregious to this Court.

### C. Comparable Cases

The final guidepost for evaluating whether a punitive damages award is excessive requires comparing the punitive damages award with the civil penalties imposed or authorized in comparable cases when evaluating whether the award is excessive. Campbell, 538 U.S. 428. This ensures proper deference is given to legislative judgments regarding the appropriate sanctions for similar conduct. Gore, 517 U.S. at 583. The Supreme Court, however, "has not declared how courts are to measure civil penalties against punitive damages, and many courts have noted the difficulty in doing so." Willow Inn, 399 F.3d at 237.

Defendants assert that there is no exact analog in the Pennsylvania Consolidated Statues and that the closest basis for comparison is Pennsylvania's Whistleblower Law, which prohibits termination for reporting certain conduct but not for refusing to engage in illegal activity. Thus, they conclude, this guidepost is not helpful and should be excluded from the excessiveness analysis. Plaintiff argues that the Court should use as a comparison, cases in which the SEC has disgorged profits from publicly-traded companies that improperly benefitted by engaging in illegal and fraudulent conduct.

The Court agrees with the Defendant that this guidepost is of little assistance to the Court in this instance. In light of

the lack of comparable analogs in the Pennsylvania Consolidated Statutes to a claim for wrongful termination in violation of Pennsylvania public policy and in light of our findings on the first two guideposts, we find the third guidepost unhelpful in our analysis.  See CGB Occupational Therapy, 499 F.3d at 190 (considering only first two guideposts where comparison between punitive damages); Inter Med. Supplies, 181 F.3d at 468 (not considering third guidepost where first guidepost alone sufficiently supported Court's decision regarding punitive damages).

Finally, the Court notes that Defendants are a prosperous, multi-million dollar corporation and, as such, a lesser punitive damages award "[may be] wholly insufficient to influence the[ir] behavior . . . ."   CGB Occupational Therapy, 499 F.3d at 193 (quoting Continental Trend Resources, 101 F.3d at 641).  Although wealth of the defendant "cannot justify an otherwise unconstitutional punitive damages award," Campbell, 538 U.S. 428, it is properly considered here as further justification for an already constitutional award.  Defendants' motion for remittitur of the punitive damages award is, therefore, denied.

In light of the Court's finding on the punitive damages award, we need not address Defendants' alternative motion for a new trial.

**CONCLUSION**

19

In light of the foregoing discussion, Defendants' Renewed
Motion for Judgment as a Matter of Law or, in the Alternative,
for a New Trial on the Sarbanes-Oxley claim and Defendants'
Motion for Remittitur of the Punitive Damages Award or, in the
Alternative, for a New Trial are DENIED.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


PAREXEL INTERNATIONAL CORPORATION, :
PAREXEL INTERNATIONAL TRUST, and   :
BARNETT INTERNATIONAL,             :
                                   :
        Plaintiffs and             :   CIVIL ACTION
        Counterclaim Defendants,   :
                                   :   No. 04-cv-3798
    v.                             :
                                   :
OSWALDO FELICIANO and INNOVATIVE   :
MEDIA MACHINE, INC.,               :
                                   :
        Defendants and             :
        Counterclaim Plaintiffs.   :


ORDER

AND NOW, this    3rd     day of December, 2008, upon

consideration of Counterclaim Defendants' ("Defendants") Renewed

Motion for Judgment as a Matter of Law or, in the Alternative,

for a New Trial on the Sarbanes-Oxley claim, Defendants' Motion

for Remittitur of the Punitive Damages Award or, in the

Alternative, for a New Trial (Docket No. 176), Counterclaim

Plaintiffs' ("Plaintiffs") Response thereto (Docket No. 179),

Defendants' Reply (Docket No. 188), Defendants' Supplement to

Their Memoranda of Law in Support of Their Post-Trial Motions

(Doc. No. 200), and Plaintiff's Response to Parexel's Supplement

to its Post-Trial Motions (Doc. No. 201), for the reasons set

forth in the accompanying memorandum, it is hereby ORDERED that

the Motions are DENIED.

BY THE COURT:


s/J. Curtis Joyner
J. CURTIS JOYNER, J.